**Cleo L. GREEN et ux., Appellants,**

v.

**HELMCAMP INSURANCE AGENCY et al., Appellees.**

No. 16112.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 6, 1973.

Rehearing Denied Oct. 4, 1973.

Jamail & Gano, Don M. Barnett, Houston, for appellants.

Boswell, O'Toole, Davis & Pickering, Mark T. Price, Houston, for appellees.

PEDEN, Justice.

Suit for damages for failure to provide insurance coverage. Appellants Mr. and Mrs. Green had obtained a default judgment against a Mr. Prudhomme for personal injuries in the amount of $8,250 arising from a vehicular collision. After the collision Prudhomme was advised that he had no insurance coverage. Prudhomme assigned to the Greens, his judgment creditors, any cause of action he had against his former insurance agent, Helmcamp, and the Greens' suit against Helmcamp is the subject of this appeal. After the case was tried on the merits and the jury had returned a verdict on special issues, the trial court entered judgment for Helmcamp on the two year statute of limitations.

Appellee Helmcamp asserts that under the evidence the pertinent events occurred on these dates:

1. April 17, 1966—Prudhomme's insurance policy expired.

2. May 3, 1966—collision occurred (Greens and Prudhomme).

3. May 5 or 6, 1966—Prudhomme was told he had no insurance coverage.

4. February 7, 1967—citation served on Prudhomme in Greens' suit; suit papers were taken to Prudhomme's lawyer within a few days.

5. March 6, 1967—Greens could have taken a default judgment.

6. September 30, 1968—Greens obtained default judgment against Prudhomme.

7. August 21, 1970—Greens filed this suit against Helmcamp.

Helmcamp was sued by the Greens under the assignment from Prudhomme more than four years after the collision but less than two years after the judgment was entered against Prudhomme.

The Greens' suit against Prudhomme sought damages of $35,000 for their personal injuries; proof of the extent of their damages was required even though Prudhomme defaulted. The default judgment the Greens obtained against Prudhomme recites that it was based on "good and sufficient evidence."

Appellants' first three points of error are:

1. It was error for the trial court to sustain appellee's motion for instructed verdict and enter final judgment in favor of appellee in that appellants' cause of action was not barred by the statute of limitations.

2. Appellants' cause of action, not having accrued until after September 30, 1968 it was error for the trial court to grant appellee's motion for instructed verdict and enter judgment in favor of appellee.

3. There being no damages giving rise to appellants' cause of action until after September 30, 1968 the statute of limitations would not commence running until such time, and it was error for the

court to grant appellee's motion for instructed verdict and enter judgment in favor of appellee.

Plaintiffs' petition contained allegations, made in the alternative, that their damages were a direct and proximate result of Helmcamp's negligence and/or misrepresentations.

In response to special issues the jury found, among other things, that 1) prior to expiration of Prudhomme's insurance policy on April 17, 1966, Helmcamp represented to him that his truck would be covered by liability insurance through May 13, 1966, 2) Prudhomme relied on such representation and 3) therefore did not obtain liability coverage on his truck from another source, 4) Prudhomme was not negligent in concluding from Helmcamp's conduct that he (Prudhomme) needed to take no further action in renewing his policy and 5) such conclusion was a proximate cause for Prudhomme's not having liability coverage on his truck on May 13, 1966.

Appellees do not contend that the evidence does not support these findings. The jury did not find from a preponderance of the evidence, in response to Special Issue No. 9, that Prudhomme failed to request a renewal of his insurance policy which expired on April 17, 1966.

The Texas Supreme Court, in Atkins v. Crosland, 417 S.W.2d 150 (1967), stated that the general rule is that a cause of action sounding in tort accrues, in the absence of a statute to the contrary or fraudulent concealment, when the tort is committed, even though the damages, or their extent, are not ascertainable until a later date. A legal injury must be sustained before a cause of action arises, the court added, quoting from 54 C.J.S. Limitations of Actions § 168, pp. 122–123, in what it termed a helpful and often quoted test for determining when the cause of action accrues:

" 'The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.

" 'If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort * * *.' See Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336 (1954)."

In that case Atkins had brought a cause of action against Crosland, his accountant, for allegedly using improper accounting methods that caused Internal Revenue to assess a tax deficiency against Atkins. Our Supreme Court held that the Plaintiff's cause of action did not arise until the tax deficiency was assessed because the assessment was the factor essential to consummate the wrong; only then was the tort complained of completed. "If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action . . . In short, in the absence of assessment, injury would not have inevitably resulted."

The Supreme Court cited its 1953 opinion in Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884, a suit brought by an insured under the Stowers Doctrine. The defendant contended that limitations began to run from the

date it last refused to settle the offers made by the plaintiff in the prior suit, but the Supreme Court ruled that since the plaintiff's liability in the first suit could not be determined until a final judgment was rendered, the statute of limitations began to run from that date, not when the insurer last refused to settle, stating:

" 'The petitioner, Linkenhoger, could not have maintained this present suit until such time as his liability and the extent thereof had been determined by a final judgment in the former case. Until then his rights had not been invaded by respondent's failure to accept the terms of settlement offered and the tort was not complete' "

■ We sustain the appellants' first three points of error. There was no evidence that Prudhomme paid anything to the lawyer to whom the citation was delivered, thus incurring any damages by way of expense at that point. We conclude that injury would not have inevitably resulted to Prudhomme from the alleged tort of Helmcamp if the Greens' suit had not been taken to judgment, so only then was the tort complained of completed. Only then did the trial court determine that the Greens had been damaged and to what extent.

Appellants' seventh point of error is that the trial court erred in submitting Special Issues 6, 7 and 8 to the jury because there were no pleadings to support their submission.

In response to those issues the jury found that 6) Prudhomme failed to use due diligence to determine that insurance was in force on his truck on May 13, 1966, 7) such failure was negligence and 8) such failure was a proximate cause of his truck's being uninsured on the date of the accident, May 13, 1966. The other issues submitted were predicated issues, and the jury was not required to answer them.

■ We sustain this point. The record reflects that the appellees did not raise the affirmative defense of contributory negligence by their pleadings and that the issues were not tried by consent, because appellants timely objected to their submission to the jury. Rules 94 and 67, Texas Rules of Civil Procedure. Even if the complaining party does not object to the testimony on the issues, if he objects to their submission on some tenable ground he cannot be regarded as impliedly consenting that they be tried when not raised by the pleadings as contemplated by Rule 67. Harkey v. Texas Employers' Ins. Assn., 146 Tex. 504, 208 S.W.2d 919 (1948).

Having thus held, we need not consider the appellants' remaining points of error.

Appellees assert as a cross-point of error that the trial court erred in overruling their trial amendment and plea in abatement alleging that the appellants had made an election of remedies by accepting an amount tendered to them by Hartford Insurance Co. in settlement of their claim against Hartford.

Appellees' "trial amendment" and plea in abatement, were submitted several months prior to the trial on the merits but after the Greens had taken a non-suit as to defendant Hartford Insurance Co., having settled their claim against Hartford for $518.51. In their third amended original petition the plaintiffs (appellants here) had earlier set forth their cause of action against Hartford, alleging that as a result of the collision in question Hartford, by and through its adjusters, agents or employees, represented to the Greens that it would pay $518.51 for the damage to their vehicle, so the Greens relied on the representation and had their car repaired. That Hartford breached its agreement and stopped payment on its check for $518.51, to the Greens' damage.

The cause of action which appellants had alleged against Hartford was not inconsistent with their allegations made against Helmcamp, which were that he and his insurance agency had, before the collision in question, contracted with Prudhomme, the

owner of the truck, that Prudhomme would have liability coverage, but that Helmcamp and his agency refused their obligations under the insurance policy. In the alternative appellants maintained that they were injured due to the negligence and/or misrepresentation of appellees, and that the doctrine of estoppel and waiver are applicable to this case.

We cannot say that the trial court abused its discretion in refusing the amendment. "An election of remedies is the act of choosing between two or more inconsistent but coexisting modes of procedure and relief allowed by law on the same state of facts." 21 Tex.Jur.2d 196, Election of Remedies § 1. The Greens' claim against Hartford appeared to be separate and distinct from the claim they asserted against Helmcamp under their assignment from Prudhomme. We note that when the trial judge refused the amendment there was in the record an agreement effective on June 30, 1965 (more than ten months before the collision in question) that terminated the agency contract between Hartford and Helmcamp.

We hold that the appellants were entitled to judgment in the amount of $8,250 under the jury findings in this case and appellants' pleaded theory of estoppel.

The Texas Supreme Court, in Wheeler v. White, 398 S.W.2d 93 (1965), quoted with approval § 90 of The Restatement of the Law of Contracts:

> "'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'"

The court stated that in cases such as the one before it "where there is actually no contract the promissory estoppel theory may be invoked, thereby supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite and substantial reliance. Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained. Since the promisee in such cases is partially responsible for his failure to bind the promisor to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise."

In our case the defensive theory of promissory estoppel would estop Helmcamp from denying the enforceability of his promise, as found by the jury, to provide liability coverage for Prudhomme at the time in question.

We reverse the judgment of the trial court and render judgment in favor of appellants in the amount of $8,250 plus costs.