DAIRYLAND COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, Appellant,

v.

The ESTATE of Rachel BASNIGHT et al., Appellees.

No. 5773.

Court of Civil Appeals of Texas, Waco.

Oct. 27, 1977.

Rehearing Denied Nov. 17, 1977.

Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellant.

Richard W. Ewing, Schleider & Ewing, Houston, for appellees.

## OPINION

JAMES, Justice.

This is a suit against a liability insurance carrier concerning primarily the question of coverage. After nonjury trial, the trial court awarded judgment in favor of Appellees against the Appellant Insurance Company in the net amount of $21,600.00 plus certain interest, said amount being composed of $20,000.00 as policy limits plus $1600.00 for cost of defending the suit wherein the deceased insured's estate suffered judgment. We affirm.

The insured is one Rachel Basnight, who died on July 20, 1972. For a period of time prior to her death, she had been issued a number of monthly policies of automobile liability insurance by Appellant Dairyland County Mutual Insurance Company of Texas, hereinafter called "Dairyland." These policies were issued through the agency of a Mr. J. L. Moak, of Beaumont, Texas, normally referred to as "Moak the Broker." The insurance policy in question was No. 41–0260391, was issued by Dairyland to Rachel Basnight for the policy period from June 14, 1972, through July 14, 1972. J. L. Moak died May 19, 1972, whereupon a Mrs. Sarah Young (Moak's ex-wife) was made Independent Executrix of his estate, and she undertook the task of winding up Mr. Moak's business affairs. In doing so she found a communication concerning endorsements to Rachel Basnight's policies and wrote Dairyland concerning the matter. The body of the letter (dated July 17, 1972) from Mrs. Young to Dairyland concerning the Basnight policies reads as follows:

"Mr. J. L. Moak, Moak the Broker, expired May 19, 1972, and I found the above policies and a request for Mr. Moak to have Rachel Basnight sign an endorsement. Kindly let me know how to proceed and the status of this and his account with you. Thank you."

The Defendant Dairyland responded to this letter by a written memorandum bearing date of July 19, 1972, addressed to Mrs. Young as executrix of J. L. Moak, reference the Rachel Basnight policies, the body of which letter reads as follows:

"Yours of 7–17–72.

"Mr. Moak was the agent for the two policies for the above captioned. He has already returned the endorsements to be signed by the insured.

"At the present time, the two policies come up for renewal on 7–14–72 and the premium as of this date has not been paid. If the insured does not remit soon the policies will lapse for non payment.

"Underwriting Department."

Louis Davis, a former employee of Mr. Moak, was assisting Mrs. Sarah Young in winding up Mr. Moak's business affairs. In doing so, he discovered the letter from Dairyland of July 19, 1972, as hereinabove quoted.

Mr. Davis was acquainted with Rachel Basnight, since he had been a customer at times at the Gusher Room in Beaumont where Mrs. Basnight was employed as a bartender. Thereupon on Thursday, July 20, 1972, Mr. Davis went to the place where Mrs. Basnight worked and talked to her. The following is the excerpt from Mr. Louis Davis's testimony concerning this conversation he had with Mrs. Basnight only a few hours before her death:

"Q. Now what was your purpose in going to see Mrs. Basnight?

"A. Well, I stopped to talk to her about that letter there, because knowing that Mr. Moak had passed away and the office was closed, I wanted to remind her by all means to send her premium up to Dairyland, to keep her insurance.

"Q. Do you recall whether or not you felt that there was some urgency in her sending the premium?

"A. Yes sir, I think the urgency was I was afraid possibly it might run out if she didn't do something about it real fast.

"Q. What was her response to that?

"A. She asked me if I would contact her again Monday evening, when she was paid.

"Q. Let me ask you about what you recall your impression was at that time. Did you have any discussion with her or did you feel that it would be satisfactory to collect the premium on Monday evening?

"A. What is was, I would had she been alive on Monday evening, and had the necessary funds, and that had she survived to Monday, which would have been her normal pay day. I, myself, could not have accepted the money, I could only act as advisor and put it in an envelope and mail it to the people and get it postmarked prior to midnight, so it would be postmarked that day.

"Q. When you concluded that conversation with Mrs. Basnight, can you tell us whether or not it was your intention to return Monday to collect the premium?

"A. It would have been my intention to have returned to see her Monday evening, to assist her, if I could, in any way. - - - - - - -."

During the evening of July 20, 1972, on the same day that Louis Davis contacted her as above referred to, Rachel Basnight was involved in an automobile collision with another vehicle containing the family of a Mr. James Smith. Rachel Basnight suffered fatal injuries as a result of the accident, as did Donna Smith, one of the passengers in the other vehicle. The other four members of the Smith family received serious personal injuries. They were James Smith and his wife Jean Smith, and their two daughters Patricia Lynn Smith and Shirley Ann Smith. Donna Smith, the one who died as a result of the accident, was another daughter of James and Jean Smith.

After Mrs. Basnight's death, a Mr. Herbin T. Molbert, a practicing attorney in Beaumont, Texas, was appointed and qualified as Administrator of the Estate of Rachel Basnight, Deceased.

The Smiths filed suit against the "Estate of Rachel Basnight and her heirs and survivors" in Cause No. E–97682 in a District Court of Jefferson County, Texas, hereinafter referred to as "the Jefferson County

suit." In their First Amended Original Petition, the Smiths alleged in paragraph I thereof: "That the Estate of Rachel Basnight is being represented by the Administrator, Herbin T. Molbert and that the said Estate may be served with service of citation by serving the Administrator, Herbin T. Molbert, 915 Goodhue Building, Beaumont, Jefferson County, Texas." Pursuant thereto, a citation was issued to "The Estate of Rachel Basnight, by serving Herbin T. Molbert, 915 Goodhue Building, Beaumont, Texas," and thereupon said citation was served upon the said Herbin T. Molbert. After Mr. Molbert was served with citation in the Smith suit, he mailed the suit papers to Dairyland with a letter requesting Dairyland to defend the suit; however, Dairyland took the position there was no policy coverage, refused to defend the suit, and returned the suit papers to Mr. Molbert. Thereafter Mr. Molbert appeared and filed pleadings in said cause as Administrator of the Estate of Rachel Basnight, and as attorney for said Estate, and in his capacities as both Administrator and as attorney representing the Estate he participated in the pre-trial discovery, moved for summary judgment, conducted the defense in the trial, filed a motion for new trial, and performed legal services for the Estate which have been stipulated in the case at bar to be of the value of $1600.00. That is to say, Mr. Molbert participated in the Jefferson County case in a real and substantial manner, both as Administrator and as attorney for the Estate.

This Jefferson County case was tried without a jury, after which the trial court therein on May 7, 1974, entered judgment in favor of the Smiths against "The Estate of Rachel Basnight and her heirs and survivors" in the total amount of $64,869.50. This judgment was not appealed.

This suit which is now before this court was filed in Travis County, Texas, by Herbin T. Molbert, Administrator of the Estate of Rachel Basnight, Deceased, and the Smiths against Defendant-Appellant Dairyland seeking to recover the full amount of the judgment rendered in favor of the Smiths against "The Estate of Rachel Basnight" in the Jefferson County suit, to wit, $64,869.50.

After non-jury trial the trial court awarded judgment in favor of Molbert as Administrator of the Estate of Rachel Basnight, Deceased, and the Smiths against Dairyland in the amount of $20,000.00, same being the policy limits of the policy in question, plus $1600.00 to Molbert for attorney's fees incurred in defense of the Jefferson County case, plus certain interest.

The trial court filed findings of fact which are substantially in harmony with the facts hereinabove outlined, and made conclusions of law, pertinent of which may be paraphrased as follows:

(1) That the letter from Dairyland to Sarah E. Young, Executrix of the Estate of J. L. Moak, of July 19, 1972, constituted a waiver of Dairyland's legal position that the policy had expired.

(2) That said letter of July 19, 1972, constituted a premise which was relied upon by Louis Davis, and by reason of his communication of such promise to Rachel Basnight, relied upon by her, so that Dairyland is precluded from denial of coverage by promissory estoppel.

(3) That said Dairyland's letter of July 19, 1972, constituted a contractual offer to Rachel Basnight which was accepted by her on July 20, 1972, prior to her death by her promise to pay.

(4) That the policy in question was in full force and effect on July 20, 1972.

(5) That Molbert made two written demands upon Dairyland to take over and defend the Jefferson County suit.

(6) That Dairyland in writing denied and refused to defend under the policy.

(7) and (8) That by reason of Dairyland's denial of coverage and refusal to defend, Plaintiffs are entitled to recover the $20,000.00 bodily injury limits under the Basnight policy, plus interest from the date of the Jefferson County judgment; and Mr. Molbert, Administrator, is entitled to recover $1600.00 as value of legal services in defense of the Jefferson County suit.

(9) That the District Court which entered the Jefferson County judgment has subject matter jurisdiction of said cause in question, and the final judgment rendered therein was not void and is not subject to collateral attack.

(10) That the extensive participation of Herbin T. Molbert, both as Administrator of the Estate of Rachel Basnight, Deceased, and as attorney for said Estate in the preparation and trial of the Jefferson County suit, made him in his capacity as such Administrator an effective party to the litigation and he is bound in that capacity by the final judgment in the Jefferson County suit.

(11) That Dairyland's refusals to accept the defense of the Jefferson County suit and the return of the suit papers to Administrator Molbert made Dairyland a party to that suit by operation of law and precludes a collateral attack on the Final Judgment therein by Dairyland.

(12) Dairyland is not liable for any of the judgment in the Jefferson County case in excess of its bodily injury limits of $20,000.00 (plus the $1600.00 cost of defending the Jefferson County suit).

Appellant's points of error raise two critical questions which must be resolved in order to make a determination of this case, and they are as follows:

(1) Was the policy in force at the time of the accident on July 20, 1972, in which Mrs. Basnight was killed; in other words, was there coverage?

(2) If there was coverage, then is the Jefferson County Judgment, recited on its face to be against "The Estate of Rachel Basnight Deceased," void and subject to collateral attack by Dairyland?

We are of the opinion and hold that there was coverage, that the Jefferson County Judgment is not void and not subject to collateral attack, and thereby affirm the trial court's judgment.

■ We revert to the coverage problem: Appellant says there is no evidence, and insufficient evidence that Dairyland waived the lapse of the policy. We do not agree, and hold that the evidence is legally and factually sufficient to support the trial court's findings of waiver.

The policy in question ran from June 14, 1972 until July 14, 1972. By Dairyland's letter of July 19, 1972, to Sarah E. Young, Executrix of the Estate of J. L. Moak, in response to her inquiry, Dairyland pointed out that the policy in question comes up for renewal on July 14, 1972 and the premium had not been paid, and then goes on to say: "If the insured does not remit soon the policies will lapse for non payment." Under the rules laid down by our Supreme Court in such cases we believe and hold that said letter constituted a waiver of the lapse or forfeiture of the policy for a reasonable time after said letter of July 19, 1972, in order to give Rachel Basnight an opportunity to pay the premium owed. Of course she died a few hours after the contents of the letter were made known to her by Louis Davis, and was thereby rendered unable to pay the premium owed. *Equitable Life Assurance Society of the U. S. v. Ellis* (1912) 105 Tex. 526, 147 S.W. 1152, 1156, 1157, and 1158; *National Life and Accident Ins. Co. v. Harris* (1937) 130 Tex. 168, 107 S.W.2d 361, 363; *Massachusetts Bonding and Ins. Co. v. Orkin Exterminating Co.* (Tex.1967) 416 S.W.2d 396, 401, 402; *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.* (Tex.1971) 464 S.W.2d 353, 357, 358. Also see *United Fidelity Life Ins. Co. v. Murph* (Beaumont CA 1936) 94 S.W.2d 809, writ dismissed.

■ Appellant further asserts there is no evidence and insufficient evidence to support the trial court's findings concerning the elements of promissory estoppel, to wit, a promise made by Dairyland intended by Dairyland to be communicated to Mrs. Basnight, and reliance upon such promise by Rachel Basnight to her detriment. We do not agree, and hold that the evidence is legally and factually sufficient to support the trial court's findings concerning the elements of promissory estoppel. Our Supreme Court in *Wheeler v. White* (Tex. 1965) 398 S.W.2d 93, at p. 96 has enunciated the rule of promissory estoppel as follows:

"A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." At another place on page 96, the Court says: "Where one party has by his words or conduct made to the other a promise or assurance which was intended to affect the legal relations between them and to be acted on accordingly, then, once the other party has taken him at his word and acted on it, the party who gave the promise cannot afterward be allowed to revert to the previous relationship as if no such promise had been made. This does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." Also see *Green v. Helmcamp Ins. Agency* (Houston 1st CA 1973) 499 S.W.2d 730, NRE; *Travelers Indemnity Co. v. Holman* (5th Cir. 1964) 330 F.2d 142, 150, 151.

Appellant further contends there is no evidence, and insufficient evidence of a contract between Dairyland and Rachel Basnight, wherein the trial court found that Dairyland made her an offer to give her a reasonable time in which to pay her premium which was accepted by her prior to her death, by her promise to pay on Monday July 24, 1972. We do not agree, but on the contrary hold that the evidence is legally and factually sufficient to support the trial court's findings of the offer by Dairyland and the acceptance by Mrs. Basnight. See *Liverpool and London and Globe Ins. Co. v. Swann* (Beaumont CA 1964) 382 S.W.2d 521, no writ.

With the assumption and holding made that coverage existed at the time of the fatal accident on July 20, 1972, we now pass to the problem of whether the Jefferson County Judgment sued upon by Appellees is void and thereby subject to collateral attack by Dairyland. We hold that such judgment is not void and therefore not subject to collateral attack by Dairyland.

The Jefferson County Judgment, being against the "Estate of Rachel Basnight, Deceased" is manifestly erroneous, because the "estate" of a decedent is not a legal entity and may not sue or be sued as such. A suit to establish the liability of a decedent should be brought against the personal representative of the estate, or, under appropriate circumstances, against the heirs or beneficiaries of the estate. *Price v. Estate of Anderson* (Tex.1975) 522 S.W.2d 690, 691.

However, the Jefferson County Judgment, even though erroneous, is not void for this reason: Although the judgment did not recite that it was against "Herbin T. Molbert, Administrator of the Estate of Rachel Basnight, Deceased"; nevertheless said judgment was binding upon him as such by virtue of his active participation in the case as hereinabove described. Since the judgment was binding on him as Administrator, it was not void and not subject to collateral attack.

Ordinarily, res judicata is applicable only between those who are parties or privies to the judgment, and it gives no rights to, or against third parties. An exception, however, exists in those situations wherein it is held that persons though not parties to the lawsuit may, by active or open participation in the trial of the cause, so connect themselves with that litigation that the resulting judgment is res judicata for or against them. *American Indemnity Co. v. Fellbaum* (1924) 114 Tex. 127, 263 S.W. 908 (rule enunciated on p. 910); *Cavers v. Sioux Oil and Refining Co.* (Comm.App.1931) 39 S.W.2d 862 opinion approved, rehearing denied 43 S.W.2d 578; *Ex Parte Foster* (1945) 144 Tex. 65, 188 S.W.2d 382. Also see *Miller v. Dyess* (1941) 137 Tex. 135, 151 S.W.2d 186.

Under the rules enunciated by our Supreme Court in *Fellbaum* and *Cavers*, above cited, we are of the opinion and hold that "Herbin T. Molbert, Administrator" was a real party to the Jefferson County Judgment although not a named party therein.

There is another rule concerning collateral attacks upon a judgment that applies to the case at bar, as stated in *Austin Indepen-*

603

*dent School District v. Sierra Club* (Tex. 1973) 495 S.W.2d 878 at p. 881:

"The judgment of a court of general jurisdiction is not subject to collateral attack except on the ground that it had no jurisdiction of the person of a party or his property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court." This rule was further discussed and applied in *Deen v. Kirk* (Tex.1974) 508 S.W.2d 70. Moreover, in *Cooper v. Texas Gulf Industries, Inc.* (Tex.1974) 513 S.W.2d 200 at p. 204, our Supreme Court states that "failure to join a party under Rule 19 is not really a jurisdictional matter inasmuch as the court does have subject matter jurisdiction over the action before it; what is involved is a question of whether the court should decline to adjudicate the dispute because certain persons are absent." Also see *Wycough v. Bennett* (Dallas CA 1974) 510 S.W.2d 112, NRE.

Dairyland did not raise the defect of nonjoinder of Herbin T. Molbert as Administrator of the Estate of Rachel Basnight until the case at bar. As stated before, Dairyland was timely tendered the defense of the Jefferson County suit and refused same. Under these circumstances, Dairyland is not a stranger to the Jefferson County suit and judgment, and not having timely raised this defect by special exception in the Jefferson County suit has waived this defect. Rule 90; *Ranger Insurance Co. v. Rogers* (Austin CA 1975) 530 S.W.2d 162, NRE.

Appellant has other points and contentions. We have carefully considered same, and overrule them as being without merit.

Appellees have asserted cross-assignments of error contending that they are entitled to a judgment against Dairyland for the full amount of the Jefferson County Judgment, to wit, $64,869.50. We have carefully considered these cross-points and contentions and overrule them as being without merit.

Judgment of the trial court is accordingly affirmed.

AFFIRMED.