

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

_____

No. 08-23-00274-CV
_____

Juan Alvarez Gottwald, Appellant

v.

Rosa Delgado Dominguez De Cano, Mario Sergio Delgado Dominguez,
Blanca Delgado De Urquidi, and Patricia Alvarez Ozuna, Appellees

On Appeal from the 171st District Court
El Paso County, Texas
Trial Court No. 2013DCV4096

## DISSENTING OPINION

This case turns on whether, for purposes of res judicata, Alvarez individually was in privity with Axiom in the Mexican suit.[1] I cannot agree with the majority opinion that such privity was established "by [1] the parties' trial stipulation, by [2] sufficient evidence of Alvarez's control of the Mexican suit [in his individual capacity], and by [3] sufficient evidence that Axiom represented

---

[1] Privity is part of the second element of res judicata. *See Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 652 (Tex. 1996) ("[Res judicata] requires proof of the following elements: (1) a prior final judgment on the merits . . .; (2) *identity of parties or those in privity with them*; and (3) a second action based on the same claims as were raised or could have been raised in the first action.") (emphasis added).

Alvarez's [individual] interests in that suit."[2] In my view, the record conclusively establishes the opposite, i.e., that no such privity existed on any of these grounds. Because the parties' stipulation was expressly restricted to privity between Axiom and Alvarez in his corporate representative capacity, because Alvarez controlled the litigation in his corporate representative capacity, and because Axiom and Alvarez individually do not have an identity of shared interests, I would conclude that Alvarez's individual claims are not barred by res judicata. Moreover, the consequences of the majority opinion's conclusion are inconsistent with the purpose of res judicata. For these reasons, I respectfully dissent.

## I. THE PARTIES' STIPULATION

In the trial court, the parties entered into a qualified stipulation that Alvarez was in privity with Axiom in the Mexican suit in a representative capacity but not in an individual capacity:

| The Delgados' counsel: | Mr. Alvarez is in privity with Axiom with respect to the filing of the Mexican suit 'cause he was not a party individually in his individual capacity but he was as the legal representative, sole administrator, and sole director of Axiom in privity with Axiom in the first Mexican suit. |
| --- | --- |
| Alvarez's counsel: | Your Honor, we agree that there is privity. We reserve the right to argue about the scope of the privity, but yes, there is privity.[3] |

The trial court disregarded the stipulation's qualified nature and instead treated it as unconditional and absolute, concluding that "it is clear and stipulated on the record by the Parties that Axiom and Juan Alvarez Gottwald are in uncontroverted privity." But capacity matters. "A party appearing in an action in one capacity, individual or representative, is not thereby bound by

---

[2] "[P]eople can be in privity [if] . . . : (1) they can control an action . . .; (2) their interests can be represented by a party . . .; or (3) they can be successors in interest[.]" *Amstadt*, 919 S.W.2d at 653. The successors element is not at issue here.

[3] Alvarez's counsel later emphasized that "Axiom has no relationship as an entity with Mr. Alvarez's personal harm that he suffered as a result of this fraud."

or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement (Second) of Judgments § 36(2) (Am. Law Inst. 1982); *see also Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984) (adopting § 36(2)). By ignoring the capacity qualification at the heart of the parties' stipulation, which was restricted to privity in Alvarez's representative capacity, the trial court construed it to extend to privity in his individual capacity. Finding no fault with this approach, the majority opinion holds that "the trial court did not err in relying on the parties' trial stipulation on privity," i.e., in concluding that Alvarez's individual claims were barred by res judicata.

Both sides stipulated that Alvarez was in privity with Axiom in the Mexican suit because he appeared as its legal representative, administrator, and director, and not in his individual capacity. Stipulations are conclusive as to the facts stipulated. *Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App.—Houston [14th Dist.] 1991, no writ). As courts, our duty to enforce such a stipulation is purely ministerial. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 887–88 (Tex. 2019). Accordingly, neither this Court nor the trial court had discretion to disregard the parties' stipulation in whole or part.

Beyond the parties' binding stipulation, I disagree with the majority opinion's analysis concluding that legally sufficient evidence showed that Alvarez controlled the Mexican suit in his individual capacity and that his individual interests were represented in that suit.[4]

## II. CONTROL

In terms of control, noting that "privity may exist when a person controls an action," citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996), the majority opinion cites the following testimony as evidence that Alvarez individually controlled the Mexican suit:

---

[4] I do not address other issues raised by the Delgados, e.g., the reporter's record's omission of certain exhibits, which Alvarez argues are either clearly irrelevant or included elsewhere in the appellate record.

Counsel:      It was you, as the sole administrator of Axiom, that filed suit against the Delgados, wasn't it?

Alvarez:      I am the sole administrator of Axiom, but--but I did it through an attorney.

Counsel:      Correct. You didn't represent Axiom, but you were the representative of Axiom.

Alvarez:      I was the representative of Axiom, yes.

Counsel:      So you were directly involved in the Mexican suit?

Alvarez:      Well, only that I signed the lawsuit, yes.

Counsel:      Yes, sir. And Axiom filed the Mexican suit at your direction 'cause you are the sole director of Axiom, correct?

Alvarez:      They--they did sue at my direction, yes.

Counsel:      And when we say that you're the sole director, I think the exact wording in the Mexican suit is that you sued in the capacity of sole administrator. Do you recall that?

Alvarez:      Yes. That's my only title in the company--sole administrator.

Counsel:      Does that mean that you're the sole owner of Axiom?

Alvarez:      No. I'm the administrator--the sole administrator.

Counsel:      But you direct all the corporate activities of Axiom?

Alvarez:      Yes. Well, yeah. Yes, I do.

Counsel:      And in this lawsuit, you're being referred to as a sole director . . . As the sole director, that means there's no other board of directors?

Alvarez:      There's no board of directors.

However, none of this testimony is probative of whether Alvarez individually was in privity with Axiom; to the contrary, this testimony substantiates that Alvarez acted in the Mexican suit in a representative capacity, i.e., on Axiom's behalf as its "administrator," "representative," and "director."

The majority opinion acknowledges that "the capacity in which parties appear is relevant in a privity analysis" but maintains that "the analysis focuses on the shared interests," and here "Axiom (or Alvarez in his representative capacity), appeared on behalf of interests that included Alvarez's individual interests." But whether a party's interests were represented in a suit (see

4

analysis below) is a different consideration from whether the party controlled the suit.

The majority opinion further notes that "Alvarez, without answering to any fellow directors, exercised more than mere participation in the Mexican suit and had more than mere knowledge of the Mexican suit—it was initiated *at his direction*." (emphasis in original). However, the opinion cites no evidence that Alvarez initiated the Mexican suit—or took any other action in that suit—in his individual rather than in a representative capacity. *See McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 389–90 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If Quisenberry, as a fifty-percent owner and the registered agent for service of process, had hired an attorney for PHH and served as its corporate representative at trial, all of these actions would *necessarily* be in Quisenberry's representative capacity.") (emphasis added).

While the majority opinion cites no case in which a party was barred by res judicata as a result of having exercised control over an earlier suit in which the party appeared in a different capacity, it does discuss *McGowen v. Huang*, 120 S.W.3d 452 (Tex. App.—Texarkana 2003, pet. denied), a case which went the other way. There, the Texarkana Court of Appeals held that a guardian who had appeared in an individual capacity in a prior case was not barred by res judicata. *Id*. at 463. According to the majority opinion, *McGowen* is distinguishable because "[a] guardian's powers . . . are not plenary, but are restricted by duties owed to the ward and the necessity to obtain court approval for most actions," whereas the powers exercised here by Alvarez were not similarly limited, given that he was "the sole administrator of Axiom and thereby, does not answer to a board of directors," and "directs all corporate activities of Axiom."

However, a corporative representative's powers are no more plenary than a guardian's, and such a representative is similarly restricted by duties owed to the entity represented, creating a clear legal separation between the individual's two different capacities. *Matter of Estate of Poe*, 648 S.W.3d 277, 286–87 (Tex. 2022) (internal citations omitted) ("[T]he . . . affairs of a

5

corporation are managed through a board of directors. Directors owe a fiduciary duty to their corporations . . . . A director's fiduciary status creates three broad duties: duties of obedience, loyalty, and due care. These fiduciary duties run to the corporation, not to individual shareholders."); *id.* at 287 ("[A] director's fiduciary duty includes a duty to dedicate 'uncorrupted business judgment for the sole benefit of the corporation.'") (citing *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014)); s*ee also Flying Diamond-W. Madisonville L.P. v. GW Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL 2707405, at *6 (Tex. App.—Waco Aug. 26, 2009, no pet.) (mem. op.) ("The sole argument advanced . . . against the application of res judicata . . . is that the prior litigation by Levine in his individual capacity did not bar him filing suit on behalf of the Madisonville Partnership in a derivative capacity as a limited partner."; "The fact that Levine was involved in both suits in different capacities is not sufficient to bar a claim by res judicata.").

Notably, the majority opinion does not suggest that the legal separation between Axiom as a corporate entity and Alvarez individually was vitiated by anything Alvarez did or did not do in relation to the Mexican suit.  Rather, the opinion focuses on Alvarez's pre-suit conduct, noting that he "paid $2,189,000 from Axiom's account to secure his personal release," i.e., he "decided, and was able, to pay the large, disputed amount by cashier's check drawn on Axiom's account." According to the opinion, "[t]his conduct demonstrates Alvarez's control and unfettered access to substantial corporate funds as sole director and without accountability to a board, and for the sole benefit of his individual release." However, Alvarez's ability to control Axiom's funds does not warrant disregarding the legal separation between them. *Penhollow Custom Homes v. Kim*, 320 S.W.3d 366, 373 (Tex. App.—El Paso 2010, no pet.) ("[M]ere control and ownership of all the stock of a corporation is not a sufficient basis for ignoring the corporate fiction."); *see also id.* at 372 ("An individual's standing as an officer, director, or majority shareholder of an entity in and of itself is insufficient to support a finding of alter ego.") Further, payment of the $2,188,759.68

6

was not "for the sole benefit of [Alvarez's] individual release," as this payment also resolved the underlying real property dispute between Axiom and the Delgados, giving Axiom ownership of the property, which it later developed. The fact that Alvarez benefited individually from Axiom's payment to the Delgados is not evidence that he acted outside his representative capacity at that point, and certainly is not evidence that he individually controlled the subsequent Mexican suit. Because neither the majority opinion nor the Delgados point to any evidence that Alvarez acted individually or on his own behalf in the Mexican suit, I cannot agree with the majority opinion's conclusion that he did so.[5]

### III. IDENTITY OF SHARED INTERESTS

Finally, noting that parties can be in privity if "their interests can be represented by a party to the action," the majority opinion cites evidence that both lawsuits arose "from the same 'nucleus of operative facts' and the same transactions." However, the same-nucleus-of-operative-facts standard pertains to res judicata's fourth element under federal law ("the same cause of action is involved in both cases"[6]), which corresponds to the doctrine's third element under Texas law (whether "the same claims . . . were raised or could have been raised in the first action"[7]). *See*

---

[5] In support of its conclusion that Alvarez, individually "actively and openly participated in the prior proceedings to such an extent that it was clear that [he] had the right to direct them," the majority opinion cites *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App.—Austin 1999, pet. dism'd) and *Dairyland Cnty. Mut. Ins. Co. v. Est. of Basnight*, 557 S.W.2d 597, 602 (Tex. App.—Waco 1977, writ refused n.r.e.). However, in *Maxson*, privity was held *not* to exist because the parties in question merely participated as witnesses in the prior proceeding, and in *Dairyland* the party in question was barred only in the specific capacity in which he appeared in the prior proceeding. *See Maxson*, 21 S.W.3d at 316 ("Although the record indicates that Plaintiffs were aware of the 1988 suit and, in some instances, participated as witnesses, these facts alone cannot establish privity under a control-of-litigation theory."); *Dairyland*, 557 S.W.2d at 602 ("Although the judgment did not recite that it was against 'Herbin T. Molbert, Administrator . . . ,' nevertheless said judgment was binding upon him *as such* by virtue of his active participation[.] Since the judgment was binding on him *as Administrator*, it was not void and not subject to collateral attack.") (emphasis added).

[6] *See Cervantes v. El Paso Healthcare Sys., Ltd.*, 645 S.W.3d 843, 847 (Tex. App.—El Paso 2022, no pet.) ("Under federal law, the doctrine of res judicata will apply if: (1) the parties are identical in both suits; (2) the prior judgment is rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both cases.") (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990)).

[7] *See Amstadt*, 919 S.W.2d at 652 ("[Res judicata] requires proof of . . .: (1) a prior final judgment on the merits . . .; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised

*Cervantes v. El Paso Healthcare Sys., Ltd.*, 645 S.W.3d 843, 847–48 (Tex. App.—El Paso 2022, no pet.) ("In determining whether two lawsuits involve the same claim or cause of action, federal courts utilize what is known as the transactional test," under which "[t]he critical question is whether the plaintiff bases the two actions on the 'same nucleus of operative facts.'") (citing *Test Masters Educational Services, Inc., v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

Under both federal and Texas res judicata law, privity is part of a different element separate and apart from the same-claims element.[8] Further, while in evaluating privity, we examine "the interests the parties shared," *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996), privity is not established by the mere fact that the parties may be interested in the same question or in proving the same facts, *Rosenberger v. LeMaster*, 678 S.W.3d 549, 560 (Tex. App.—Houston [14th Dist.] 2023, no pet.). Rather, the parties must "share *an identity of interests* in the basic legal right that is the subject of litigation." *Amstadt*, 919 S.W.2d at 653 (emphasis added). Thus, where the parties' interests are overlapping, no privity exists if the party in the second suit has an interest that is "separate and apart" from those of the party in the first suit. *See Fincher v. Wright*, 141 S.W.3d 255, 261 (Tex. App.—Fort Worth 2004, no pet.) (holding that while attorney and client had mutual interests, "[b]ecause [attorney] Holloway [also] had an interest . . . separate and apart from his client's, . . . [they] were not in privity").

Here, the majority opinion points to evidence of overlapping interests, i.e., that "Axiom sought the return of $2,189,000.00 in the Mexican lawsuit, and Alvarez, in his individual capacity, and Axiom, sought the very same amount in the [Texas] trial court." But the crucial question is whether, in the Mexican suit, Axiom (or Alvarez on its behalf) represented or could have

---

or could have been raised in the first action.").

[8] *See* footnote 4 (first versus fourth element under federal law) and footnote 5 (second versus third element under Texas law) above.

represented Alvarez's non-overlapping individual interests, i.e., those reflected in his claims for intentional infliction of emotional distress and abuse of process, as well as conspiracy to commit the same. The Delgados point to no evidence that Axiom or Alvarez as its director represented or could have represented such interests in the Mexican suit. Nor does the majority opinion. As a result, I cannot agree that privity is supported by evidence that Axiom represented Alvarez's individual interests in the Mexican litigation.

## IV. PURPOSE OF RES JUDICATA

Res judicata aims to "bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). But it does not exist to bar claims brought by a party acting in a different capacity than in an earlier suit where there is no evidence of control or a singular identity of shared interests across the two capacities, as the majority opinion holds today. *See* Restatement (Second) of Judgments § 36(2) (Am. Law Inst. 1982) (a party appearing in different capacities in different actions "is not [] bound by or entitled to the benefits of the rules of res judicata"); *Gracia*, 667 S.W.2d at 519 (adopting § 36(2)); *see also Fincher*, 141 S.W.3d at 261 (no privity exists if the party in the second suit has an interest that is "separate and apart" from those of the party in the first suit).

Further, by concluding that Alvarez individually was in privity with Axiom in the Mexican suit because the two suits involved "the same nucleus of operative facts," the opinion effectively eliminates the second element of res judicata, i.e., identity of the same parties or those in privity with them.

Eliminating the privity element will either prevent parties from later bringing legitimate claims or encourage the expansion of litigation by forcing all persons who may have a claim related to the basic facts of any given suit to join that suit and bring all possible claims to avoid later being

9

barred by res judicata. While not every "nucleus of operative facts" gives rise to potential claims by multiple claimants who are strangers to each other, some do, and some give rise to a great many such claimants. I cannot join the majority opinion's approach to res judicata, under which claimants may find themselves unexpectedly and unfairly barred, and ultimately large and unwieldly lawsuits may result from joinder by unnecessary parties seeking to avoid being barred.

## V. CONCLUSION

I respectfully dissent from the majority opinion's affirmance of the trial court's dismissal of Alvarez's suit based on res judicata.


LISA J. SOTO, Justice


September 30, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Soto, J., dissenting