# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 9, 2011

Lyle W. Cayce
Clerk

No. 10-20743

JOSLYN M. JOHNSON,

Plaintiff - Appellant

v.

CITY OF HOUSTON; HOUSTON POLICE DEPARTMENT,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-cv-366

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Joslyn Johnson sued the City of Houston ("City"), alleging that the City's policy preventing police officers from contacting federal immigration authorities violated her state and federal constitutional rights. The district court dismissed Johnson's case, holding that a previous case Johnson had filed against the City barred the current case under principles of claim preclusion, or *res judicata*. We REVERSE.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20743

FACTS

On September 21, 2006, Houston Police Officer Rodney Johnson ("Rodney") stopped Juan Leonardo Quintero-Perez for speeding. Rodney searched Quintero-Perez for weapons, found and confiscated a weapon, handcuffed Quintero-Perez, and placed him in the back of his patrol car. Sometime later, while Quintero-Perez was still in custody, Quintero-Perez fatally shot Rodney in the back of the head. Quintero-Perez was convicted of capital murder of a police officer and is now serving a life sentence.

Quintero-Perez was an illegal alien. He was convicted of a felony in 1999 and deported, but reentered the United States that year.[1] Between 1999 and 2006, Houston Police Department ("HPD") officers arrested or detained Quintero-Perez at least three times. On none of these incidents did the HPD officers check to see if federal immigration authorities had an outstanding arrest warrant for Quintero-Perez. At the time of Rodney's death, the HPD maintained a policy prohibiting HPD officers "from communicating with the federal Department of Homeland Security and pertinent federal databases to determine the criminal status of detained persons and whether a federal arrest warrant is pending for such person." Johnson refers to this policy as the "Sanctuary Policy."

Sometime after Rodney's death in 2006, the HPD changed its policy to allow officers to check the "wanted" status of anyone legally detained and to require officers to check the "wanted" status of anyone ticketed, arrested, or jailed ("Current HPD Policy"). HPD officers perform these checks by running the person's name through several databases, including the National Crime Information Center ("NCIC") database, which may indicate whether the person

---

[1] We take these facts from Johnson's complaint because "[i]n reviewing the dismissal order, [this court] take[s] the well-pled factual allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

No. 10-20743

is the subject of an outstanding warrant or wanted for another reason. The Current HPD Policy prohibits officers from contacting federal immigration officials unless the officer receives an "NCIC immigration hit." An "NCIC immigration hit" indicates that the person is the subject of an outstanding criminal warrant issued by federal immigration authorities, an administrative warrant of removal, or a notice of detainer for a previously deported felon convicted of drug trafficking, firearms trafficking, or other serious crimes. The NCIC database lists only aliens convicted and deported for "drug trafficking, firearms trafficking, or serious violent crimes." In addition to the NCIC database, the federal government maintains other databases containing information on a person's immigration status. The Current HPD Policy does not allow HPD police officers to obtain immigration information from any database other than the NCIC database. Furthermore, under the Current HPD Policy, HPD officers are forbidden from notifying federal authorities that they have encountered a known illegal alien unless they arrest that person on a "separate criminal charge (other than a class C misdemeanor)."[2]

On September 22, 2008, Johnson, in both her individual capacity and as the executrix for the estate of Rodney, filed suit against the City of Houston in Texas state court ("*Johnson I*"). In her original complaint, Johnson alleged negligence and gross negligence claims against the City. Johnson later amended her complaint to add a 42 U.S.C. § 1983 claim, alleging that the City's Sanctuary Policy violated Rodney's federal constitutional rights. The City removed Johnson's case to federal district court. Once in federal court, Johnson filed her fourth amended complaint, which alleged that the City's maintenance and enforcement of the Sanctuary Policy deprived Rodney of his life and liberty as guaranteed by the Fourteenth Amendment of the U.S. Constitution. She argued

---

[2] It is unclear from Johnson's pleading whether this restriction was in place at the time of Rodney's death.

that, but for the Sanctuary Policy, the police officers that had previously encountered Quintero-Perez would have accessed federal databases, discovered the existence of a federal arrest warrant, arrested Quintero-Perez, and turned him over to federal immigration officials. The fourth amended complaint also re-alleged Johnson's negligence and gross negligence claims.

The City filed a motion to dismiss *Johnson I* on several grounds, including Johnson's lack of standing to bring the § 1983 suit on her own behalf. On September 8, 2009, the district court dismissed *Johnson I*. The court first held that the City's motion to dismiss Johnson's § 1983 claims brought in her individual capacity was moot "as Plaintiff makes no such claims." The court then dismissed Johnson's § 1983 claims brought in her capacity as executrix of Rodney's estate, holding that she had failed to allege a substantive due process claim because "the municipality's policy did not create the danger" to Rodney's life. It finally dismissed Johnson's gross negligence claim as barred by sovereign immunity and remanded her remaining state law negligence claim to Texas state court.

On September 21, 2009, Johnson filed this lawsuit against the City, the HPD, and former Chief of Police Harold Hurtt, in his official capacity. Relevant to this appeal, Johnson raised a 42 U.S.C. § 1983 claim alleging that the Current HPD Policy violated (1) her right to freedom of expression under the First Amendment and (2) her rights under 8 U.S.C. §§ 1373 and 1644[3] by prohibiting her from contacting federal immigration authorities to request or provide

---

[3] 8 U.S.C. § 1373(a) provides:
Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

Section 1664 contains a similar provision protecting local government entities' rights to send and receive information to federal immigration authorities. 8 U.S.C. § 1644.

information about the immigration status of persons she encounters as a police officer. She also raised a claim under Article I, Section 8 of the Texas Constitution alleging that the Current HPD Policy violated her right to freedom of expression. The City subsequently filed a Rule 12(b)(6) motion to dismiss on several grounds.

On September 30, 2010, the district court issued an order granting the City's motion. Relevant to this appeal,[4] the court held that Johnson's § 1983 and Texas constitutional claims were barred by *Johnson I* under principles of claim preclusion (or *res judicata*). In doing so, the court held that (1) the parties in *Johnson I* and this suit were identical because Johnson "controlled the prior litigation and was in privity with a party in it"; (2) a court of competent jurisdiction had dismissed *Johnson I*; (3) the other court's determination in *Johnson I* was final and on the merits; and (4) Johnson raised the same cause of action in both *Johnson I* and the current suit. Johnson timely appealed.

## STANDARD OF REVIEW

We review a district court's order granting a Rule 12(b)(6) motion to dismiss *de novo*. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Id.*

## DISCUSSION

"Federal law determines the res judicata effect of a prior federal court judgment." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990). This court has held that:

---

[4] The district court also (1) dismissed Johnson's claims against the HPD because it is not a legal entity, (2) dismissed Johnson's writ of mandamus action against Hurtt because he is not a federal officer, and (3) dismissed Johnson's other claims against Hurtt in his official capacity because the City was also named as a defendant for those claims. Johnson does not appeal these rulings.

No. 10-20743

> Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. The test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. When all four elements are present, claim preclusion prohibits a litigant from asserting any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action.

*Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010) (internal quotation marks and citations omitted). Johnson argues that the district court erred in concluding that *res judicata* bars the current lawsuit. For the reasons described below, we hold that the district court erred in holding that the first and fourth elements of the claim preclusion test were satisfied.[5]

A.    Identity of the parties

Johnson very briefly argues that the district court erred in applying claim preclusion because "the parties are not technically identical."

As the district court correctly noted, "[t]o satisfy the identity element, strict identity of parties is not necessary. A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). We have also previously held that, for the purposes of claim preclusion, privity exists "where the non-party controlled the prior litigation." *Meza*, 908 F.2d at 1266. The district court concluded Johnson controlled *Johnson I* and was in privity with a party in it—namely, Johnson in her capacity as executor to Rodney's estate.

---

[5] Johnson concedes that the second and third elements of the claim preclusion test were satisfied.

No. 10-20743

However, "the control principle cannot apply to a person who, as a party, controls litigation in one capacity, and then is involved in subsequent litigation in another capacity." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 18A FEDERAL PRACTICE & PROCEDURE § 4451, at 384-85 (2d ed. 2002). This is because, as a general rule, the identity requirement for claim preclusion is not fulfilled when a person participates in two different suits in different capacities. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 973 (5th Cir. 1986)("Res judicata does not apply to a situation . . . in which a party appears in one action in an individual capacity and in a subsequent action in a representative capacity.");[6] RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.").

Johnson did not bring her § 1983 claims in *Johnson I* in her individual capacity. Although she brought her *state negligence* claims individually, she brought the Fourteenth Amendment claims as executrix of Rodney's estate. By contrast, she brings her current claims in her individual capacity. Under this

---

[6] The district court seemed to rely on this court's prior statement that "[i]f a party's interests are represented in a prior action, the identity of parties element is satisfied [and] . . . [t]his satisfaction is not defeated by a change in the capacity in which an individual sues." *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 357 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007). This statement conflicts with our prior holding, but it is also dictum— *Laird* addressed the preclusive effect of a plaintiff's state wrongful death claim on his federal *qui tam* claim. *Id.* at 349-50. The plaintiff in *Laird* did not change the capacity in which he was sued, this court only addressed whether he was a party in interest in the *qui tam* claim. *Id.* at 358. Further, *Laird* was not an en banc decision and therefore could not overrule this court's prior precedent. *United States v. Rodriguez-Jaimes*, 481 F.3d 283, 288 (5th Cir. 2007) ("Absent an en banc or intervening Supreme Court decision, one panel of this court may not overrule a prior panel's decision.").

circuit's precedent, the identity-of-the-parties element was not met. *See Clark*, 794 F.2d at 973.

B.    Identity of the causes of action

Johnson also asserts that *Johnson I* and this suit do not involve the same cause of action because the facts of this case are unrelated to *Johnson I,* the two cases do not form a convenient trial unit, and trying the cases together would not have met the expectations of the parties. The City argues that this case raises the same cause of action as *Johnson I* because both actions "revolve around the circumstances surrounding [Rodney's] death and the HPD policies which . . . Johnson claims prohibit officers from determining a person's immigration status."

To determine whether two lawsuits involve the same claim or cause of action, we have adopted the transactional test of the Restatement (Second) of Judgments. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)). Under the Restatement's test:

> What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments, § 24(2). The critical issue is whether "the two actions under consideration are based on the *same nucleus of operative facts*." *In re Southmark*, 163 F.3d at 934 (emphasis in original) (internal quotation marks omitted). "In this inquiry, we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992).

No. 10-20743

Applying the transactional test, the district court concluded that *Johnson I* and the current suit raised the same cause of action. It stated that "the factual predicate in both suits relates to [Johnson's] complaints of what she deems to be flawed policies and/or practices of HPD that preclude her and other officers from inquiring into a detained person's immigration status." The court noted that in both suits, Johnson (1) described the circumstances of Rodney's death; (2) alleged that the HPD maintained a policy preventing officers from inquiring into a detained person's immigration status; and (3) alleged that HPD policy led to Rodney's death. It also held that Johnson's two claims made a "convenient trial unit" and that she "could have easily brought her claims alleged in the current action in that suit as well."

We disagree. *Johnson I* and this lawsuit do not arise from the same transaction and are not based on the same nucleus of operative facts. Although Johnson alleges in her complaint for this case that the policies in the Current HPD Policy led to Rodney's death, Rodney's death is not a factual predicate of Johnson's current claim. Johnson's First Amendment claim, §§ 1373(a) and 1664 claims, and her claim under the Texas Constitution are wholly unrelated to Rodney's death. Therefore, Rodney's death cannot be part of this case's nucleus of operative facts. *See In re Southmark*, 163 F.3d at 934.

Further, although both lawsuits challenge the propriety of HPD policies, each challenges a *different* policy. Johnson's claim in *Johnson I* alleged that the HPD maintained its Sanctuary Policy with indifference to officer safety and that Rodney lost his life because of the Sanctuary Policy. Her current claim, however, alleges that the Current HPD Policy, enacted after Rodney's death, violates her free speech rights and various federal statutes. The Current HPD Policy differs from the Sanctuary Policy in that it allows HPD officers to check the "wanted" status of detained individuals and to contact federal immigration authorities if there is an "NCIC immigration hit." The facts underlying the current claim are

9

not "related in time, space, [or] origin" to the facts of *Johnson I* because the City indisputably did not adopt the Current HPD Policy until after Rodney's death.

Finally, although the two actions make a convenient trial unit because it would have been feasible for Johnson to have brought the current claim along with *Johnson I*, the City would not have had a reasonable expectation that a plaintiff bringing a § 1983 lawsuit based on one municipal policy would include facial challenges to another, later-enacted, policy in the same suit. Because the current lawsuit is based on a different nucleus of operative facts from *Johnson I*, it does not raise the same cause of action for claim preclusion purposes.

After our *de novo* review, we conclude that the current case and *Johnson I* do not meet the first and fourth elements of this circuit's test for claim preclusion. It was error to dismiss Johnson's current lawsuit as barred by *res judicata*.

## CONCLUSION

For the foregoing reasons, the district court's order of dismissal is REVERSED and the case is REMANDED for further proceedings.