**Affirmed, in Part, and Reversed and Remanded, in Part, and Opinion filed July 9, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01142-CV

---

### MCNEIL INTERESTS, INC., Appellant

### V.

### JAMES G. QUISENBERRY, JR., Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2010-37449**

---

### O P I N I O N

Appellant McNeil Interests, Inc. sued appellee James G. Quisenberry, Jr. for sums owing on two notes. Following a bench trial, the trial court entered a take nothing judgment against McNeil Interests along with findings of fact and conclusions of law resolving that McNeil Interests claims are barred by the doctrine of res judicata. In three issues, McNeil Interests appeals the trial court's judgment. We affirm, in part, and reverse and remand, in part.

# I. BACKGROUND[1]

Ricky McNeil is a sergeant in the Houston Police Department and has been for over twenty years. McNeil also invested in various business opportunities over the years. McNeil and his mother formed McNeil Interests to engage in certain investments. McNeil owned 75% of the shares of McNeil Interests, and his mother owned the other 25%.

In the spring of 2006, Quisenberry approached McNeil about investing in a high end car sales business he owned and operated as a sole proprietor. McNeil agreed to invest, and the two formed Performance Highline of Houston, LLC ("PHH"). Quisenberry and McNeil were each 50% owners of PHH.

PHH applied for and received a revolving line of credit with Amegy Bank in the initial amount of $200,000, which PHH used to purchase its first vehicles. PHH, McNeil, and Quisenberry executed a series of documents for the loan. PHH executed a business loan agreement, which outlined the terms of the loan, and a promissory note. McNeil and Quisenberry each executed a commercial guaranty agreement guaranteeing that note in their individual capacities. McNeil Interests executed a commercial pledge agreement pledging its mutual funds account maintained at Amegy Bank as collateral to secure PHH's loan. PHH's line of credit with Amegy Bank increased over time and reached a high point of $600,000 (the "Amegy note").

When PHH needed additional operating funds, McNeil Interests loaned $100,000 to PHH (the "McNeil Interests note"). On November 30, 2007, PHH and Quisenberry executed, as co-obligors, a promissory note to McNeil Interests in the

---

[1] We derive this factual background largely from McNeil Interests' brief. As Quisenberry declined to submit a brief or otherwise contest the McNeil Interests' statement of facts, we take them as true. TEX. R. APP. P. 38.1(g); *Rawlins v. Rawlins*, 324 S.W.3d 852, 854 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

principal amount of $100,000. In late 2007 and early 2008, the slow-down in the economy began hurting the business. In early 2008, Quisenberry came to McNeil and told him that he was not making enough money from PHH and asked whether McNeil minded if he took on other work to supplement his income.

In 2008, McNeil discovered that Quisenberry had been transferring substantial sums of money out of PHH to his mother, Dianna Quisenberry, without any authority. At trial, Quisenberry's mother admitted that she received these transfers, but said she did it to help Quisenberry manage his personal affairs, because he did not have a bank account.

In approximately May or June of 2008, McNeil Interests gave PHH and Quisenberry notice of default under the $100,000 note and made its demand on them both for payment in full. PHH defaulted on the Amegy note, and Amegy Bank exercised its rights under the commercial pledge agreement, taking approximately $620,000 out of McNeil Interests' mutual fund account pledged. McNeil Interests demanded that PHH and Quisenberry pay contribution to it, but both failed and refused to do so.

On December 1, 2008, McNeil Interests filed suit against PHH for breach of contract, contribution, and subrogation—claims all related to PHH's failure to pay McNeil Interests the amount paid on the $600,000 Amegy note, and suit on the $100,000 McNeil Interests note ("Lawsuit No. 1"). On February 16, 2009, the trial court signed a final default judgment awarding McNeil Interests judgment against PHH for the principal sum of $700,000 (representing the Amegy note and the McNeil Interests note), prejudgment interest on the sum of $100,000 (representing the McNeil Interests note), attorney's fees, and post judgment interest.

3

On June 17, 2010, McNeil Interests and McNeil, individually and as shareholder on behalf of PHH, filed this suit against Quisenberry.[2] McNeil Interests alleged claims against Quisenberry for contribution on the $600,000 Amegy note and suit on the $100,000 McNeil Interests note.

After a bench trial, the court ordered that McNeil and McNeil Interests "take nothing" from Quisenberry based upon Quisenberry's affirmative defense of res judicata. Although the trial court entered findings of fact and conclusions of law determining that Quisenberry is liable to McNeil Interests on both the Amegy note and the McNeil Interests note, the trial court also found in pertinent part that:

As to the Amegy Note:

- PHH executed a promissory note in the amount of $600,000 with Amegy Bank.
- McNeil Interests executed a commercial pledge agreement in favor of Amegy Bank as collateral for the Amegy note.
- Quisenberry and McNeil were each personal guarantors on the Amegy note.
- PHH defaulted on the Amegy note.
- Amegy Bank foreclosed on the McNeil Interests collateral.

As to the McNeil Interests Note:

- PHH and Quisenberry executed a promissory note in the amount of

---

[2] McNeil, individually and as shareholder of PHH, alleged claims against Quisenberry for breach of fiduciary duty, violations of the Texas Theft Liability Act, violations of the Texas Business Organizations Code for making unauthorized distributions to himself, and making fraudulent transfers of PHH's assets to himself. The trial court concluded that these claims were barred by the two-year statute of limitations and entered a take-nothing judgment on those claims. McNeil does not challenge on appeal the bar of those claims.

McNeil and McNeil Interests also sued Dianna Quisenberry. The trial court concluded that Dianna Quisenberry was not liable to McNeil or McNeil Interests and entered a take-nothing judgment on the claims against her. Neither McNeil nor McNeil Interests challenges the judgment as to the claims against Dianna Quisenberry.

$100,000 payable to McNeil Interests and secured by certain collateral.

- PHH and Quisenberry defaulted on the McNeil Interests note.

- McNeil Interests gave notice of the default and accelerated the McNeil Interests note.

As to Lawsuit No. 1:

- Quisenberry and McNeil are each 50% percent owners of PHH.

- McNeil Interests filed suit against PHH in Lawsuit No. 1 for breach of contract, contribution as co-guarantor of the Amegy note, subrogation, and suit on the McNeil Interests note.

- McNeil interests obtained a default judgment against PHH in Lawsuit No. 1.

- Quisenberry pleaded, *inter alia*, res judicata.

Based upon these findings, the trial court concluded:

- Claims made by McNeil Interests against PHH in Lawsuit No. 1 were fully litigated.

- As a person holding a 50% interest in PHH, Quisenberry is in privity with PHH and could have been sued as such in Lawsuit No. 1.

- The court found in favor of Quisenberry on his affirmative defense of res judicata.

McNeil and McNeil Interests filed a motion for new trial, in which they urged that there was legally and factually insufficient evidence that Quisenberry was in privity with PHH to support res judicata; that res judicata did not apply because Quisenberry was not a party to Lawsuit No. 1; and that Quisenberry had waived his res judicata defense. Quisenberry responded arguing that res judicata applied and that McNeil and McNeil Interests waived their right to argue that Quisenberry had waived the doctrine. McNeil and McNeil Interests' motion was overruled by operation of law.

5

McNeil Interests brings this appeal arguing that the trial court's take-nothing judgment, founded on res judicata, must be reversed because (1) there is insufficient evidence to support a finding of res judicata; (2) its claims are not barred by res judicata as a matter of law; and (3) its claims are not barred by res judicata because Quisenberry waived his res judicata defense.

## II. STANDARD OF REVIEW

Findings of fact entered in a case tried to the court are entitled to the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When the appellant attacks the legal sufficiency of a finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the finding. *Id.* at 810. We may not sustain a legal sufficiency, or "no evidence" point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.*

To evaluate the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting the finding

is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review the trial court's conclusions of law de novo. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We review conclusions of law to determine whether the conclusions drawn from the facts are correct. *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *Busch*, 312 S.W.3d at 299. We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

### III. RES JUDICATA

By its first two issues, McNeil Interests urges that its claims are not barred by res judicata. A party claiming the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were *or could have been raised* in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Thus, res judicata bars more than matters actually litigated; it also bars "'*causes of action or defenses* which arise out of the same *subject matter* and which might have been litigated in the first suit.'" *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992) (quoting *Tex. Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex. 1979)).

7

The public policy underlying the doctrine of res judicata could not be more clear in Texas jurisprudence. As a subset of the broad principles of issue and claim preclusion, res judicata brings litigation to an end, prevents vexatious litigation, maintains the stability of court decisions, promotes judicial economy, and prevents double recovery. *Id.* at 629 (citing Zollie Steakley & Weldon U. Howell, Jr., *Ruminations on Res Judicata*, 28 Sw. L.J. 355, 358–59 (1974)). In *Barr*, the Texas Supreme Court discussed confusion over the related claim-preclusion concepts and, in an effort to eliminate the inconsistency, explicitly adopted the Restatement of Judgments transaction approach to claims preclusion. *Id.* at 631. By this holding, the *Barr* court rejected the "pure policy approach" of *Westinghouse Credit Corp. v. Knowslar*, 496 S.W.2d 531 (Tex. 1971), and the theory versus cause of action approach of *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex. 1973). Fundamentally, however, our application of res judicata to the particular facts of any case must give assurance that the party to whom we apply the doctrine has had his day in court and, thereby, due process. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971).

At first blush, the *Barr* transactional approach and its ultimate holding appear to be instructional here. The Supreme Court concluded:

> It is clear that in this case the execution of the partnership note and Barr's guarantee of it were related in time and space and motivation, and the parties considered it a single transaction. The issues of both claims form a convenient trial unit, whereas separate lawsuits would require significant duplication of effort of the court and the parties involved. With due diligence, the claim that Barr was liable because he is a partner could have been joined in the suit on his guarantee of the partnership note.

*Barr*, 837 S.W.2d at 631. Therefore, the bank's second lawsuit alleging Barr's personal liability on the partnership note due to his status as a partner was foreclosed by its prior lawsuit on Barr's personal guarantee. *Id.* The plain

8

language of this holding seems to signal a rule of compulsory joinder of claims against a partner arising from his liability *as a partner* and as a guarantor.

However*, Barr* cannot control this case as Quisenberry urged in the trial court because, unlike *Barr*, Quisenberry was not sued at all in Lawsuit No. 1. The *Barr* court evaluated the transactional nature of the two claims *against Barr* as a partner and a guarantor. Stated differently, the *Barr* transactional analysis answers the "subject matter" question, not the "party or privity" question. *See generally Zurita v. Lombana*, 322 S.W.3d 463, 474 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting that, under the transaction approach, "the subject matter of a suit is based on the factual matters that make up the gist of the complaint" and "[a]ny claim that arises out of those facts should be litigated in the same lawsuit").

Here, McNeil Interests does not challenge the trial court's implicit "transactional" analysis. Specifically, McNeil Interests does not contest that it obtained a final judgment against PHH in Lawsuit No. 1 and it *could have* brought its current claims against Quisenberry in Lawsuit No. 1—that is elements one and three of res judicata. Instead, McNeil Interests challenges the trial court's determination that, because Quisenberry is a fifty-percent owner of PHH, McNeil Interests was *required* to bring its claims against Quisenberry in Lawsuit No. 1 against PHH. As such, privity, which was not before the *Barr* court, is the only question before this court.

Like McNeil Interests, we find no case and Quisenberry has never cited any authority for the proposition a fifty-percent owner of a company is in privity with its company on all obligations arising from a transaction for purposes of res judicata—as a matter of law. The Texas Supreme Court has never recognized such a principle of privity in res judicata.

9

Instead, a nonparty is considered in privity, or sufficiently close to a party in the prior suit as to justify issue preclusion, in three circumstances according to the Texas Supreme Court: (1) where he controlled an action even if he was not a party to it; (2) where his interests were represented by a party to the action; or (3) where he is a successor in interest, deriving his claims through a party to the prior action. *See Amstadt*, 919 S.W.2d at 653. On the other hand, "privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts." *Benson*, 468 S.W.2d at 363. Privity turns on the circumstances of the case. *See Getty Oil v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992).

Through the privity issue in this case, we must determine whether it was compulsory for McNeil Interests to join its claims against Quisenberry as guarantor on the Amegy note and co-maker on the McNeil Interests note with its claims against PHH. We turn to the analysis of the trial court's privity determination and its res judicata judgment. In this case, it is not clear whether the trial court determined that Quisenberry's fifty-percent ownership interest in PHH placed him in privity for purposes of Lawsuit No. 1 because Quisenberry was "in control" of the litigation against PHH or because Quisenberry's interests were represented in Lawsuit No. 1. Quisenberry did not argue in the trial court that he is PHH's successor in interest; there is no evidence to support such a determination. Thus, we confine our analysis to the first two circumstances of privity.

## A. Privity Through Control of the Litigation

The "litigation" or Lawsuit No. 1 in this case is McNeil Interests lawsuit against PHH. Quisenberry introduced two documents to establish the preclusive effect of Lawsuit No. 1: (1) the original petition; and (2) the final default judgment against PHH. The original petition reflects that Quisenberry, individually, was not

10

a party. This fact is undisputed in the testimony before the court as well. The petition also reflects that James G. Quisenberry is named as the registered agent for service of process for PHH. The causes of action listed in the petition are: breach of contract arising from PHH's failure to "reimburse and indemnify" on the Amegy note and suit on a note arising from PHH's failure to pay all sums owing on the note.

The other exhibit, the final default judgment, recites that citation was served and PHH failed to answer. As such, the trial court awarded McNeil Interests judgment in the total amount of the Amegy note and the McNeil Interests note plus interest and attorneys' fees. The documentary evidence also amply establishes Quisenberry's fifty-percent ownership interest in PHH. Based upon the foregoing, the trial court's explicit findings of fact are supported by the record. The trial court did not make a finding that Quisenberry "controlled" Lawsuit No. 1.

However, even if we imply a fact finding that Quisenberry was in privity with PHH because he controlled the litigation, we conclude this implied finding is not supported by any evidence in the record. "In determining whether privity exists through control over a prior action, Texas courts have focused on whether an individual actively and openly participated in the prior proceedings to such an extent that it was clear that the individual had the right to direct them." *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316 (Tex. App.—Austin 1999, pet. dism'd by agr.). "[M]ere participation in a prior trial does not suffice to bar the participant on principles of res judicata, nor does knowledge of an ongoing trial." *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.).

Here, Quisenberry acknowledged that he was served with Lawsuit No. 1. He stated that he had no conversations with McNeil before McNeil Interests filed that lawsuit against PHH. There is no evidence that Quisenberry actively or

11

openly participated in the prior proceeding. There is no evidence that Quisenberry even hired an attorney to appear on behalf of PHH. The only evidence is to the contrary; McNeil Interests obtained a default judgment against PHH because no one appeared to defend the LLC.

Consistent with a Restatement (Second) of Judgments approach to privity, we conclude, as a matter of law, that Quisenberry's ability to control PHH's participation in Lawsuit No. 1, assuming such to be true, would not amount to "control" sufficient for privity or res judicata. "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982); *see also Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984) (noting the Restatement (Second) of Judgments section 36(2) limitation on applying res judicata where parties appear in different capacities); *Johnson v. City of Houston*, 444 F. App'x 26, 31 (5th Cir. 2011) (holding that "'the control principle cannot apply to a person who, as a party, controls litigation in one capacity, and then is involved in subsequent litigation in another capacity'" (quoting 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4451, at 384–85 (2d ed. 2002))).

If Quisenberry, as a fifty-percent owner and the registered agent for service of process, had hired an attorney for PHH and served as its corporate representative at trial, all of these actions would necessarily be in Quisenberry's representative capacity. His hypothetical control of Lawsuit No. 1 would not support a finding of privity under the Restatement (Second) of Judgments.

The trial court's res judicata judgment and the underlying privity conclusion cannot be sustained on the basis that Quisenberry was in privity with PHH through

his control of Lawsuit No. 1.

## B. Privity Through a Prior Representation of Interests

Privity may also exist if the parties share an identity of interest in the basic legal right that is the subject of the litigation. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 96 (Tex. App.—Eastland 2010, pet. denied). But, again, distinct capacities are an obstacle to res judicata. *Id*. (holding that interests were not identical for purposes of res judicata because Montgomery signed deeds of trust in his capacity as president of MFC, but signed the note in his individual capacity).

There is no evidence that PHH, through its failure to represent itself in Lawsuit No. 1 as the maker of the Amegy note and the maker of the McNeil Interests note, represented or should be deemed to have represented Quisenberry as a guarantor or co-maker of those notes. The Restatement (Second) of Judgments speaks to this issue as well. "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." RESTATEMENT (SECOND) OF JUDGMENTS § 49 (1982).

The interest that McNeil Interests asserts against Quisenberry in this case is contribution (as a guarantor) on the Amegy note and breach of contract (as a co-maker) on the McNeil Interests note. The interest that McNeil Interests asserted against PHH in Lawsuit No. 1 was (1) regarding the Amegy Note, breach of contract, contribution, and subrogation arising from PHH's failure to reimburse and indemnify McNeil Interests; and (2) regarding the McNeil Interests note, suit on a note. The only contract McNeil Interests had with PHH was the commercial pledge agreement by which McNeil Interests pledged collateral for the Amegy note. Though Quisenberry signed the agreement as the managing member of PHH, as did McNeil, Quisenberry did not sign that agreement individually. Though these claims arise from the same temporal transaction, they are distinct obligations.

13

The only commonality of "interest" is the dollar amount of the obligations. So, the only way that PHH could have impacted Quisenberry's obligations as a guarantor or a co-maker in Lawsuit No. 1 is to pay the judgment. Then, Quisenberry could urge a bar under the one satisfaction rule. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (noting that, under the one satisfaction rule, "a plaintiff is entitled to only one recovery for any damages suffered").

The trial court's res judicata judgment and the underlying privity conclusion cannot be sustained on the basis that Quisenberry was in privity with PHH because PHH previously represented Quisenberry's interests in Lawsuit No. 1. We therefore sustain McNeil Interests' first and second issues. Because we sustain the first and second issues, we need not address McNeil Interests' third issue regarding Quisenberry's waiver of his res judicata defense.

## IV. CONCLUSION

Having sustained McNeil Interests' first and second issues, we reverse that portion of trial court's judgment against McNeil Interests on its claims against Quisenberry as to the $600,000 Amegy note and the $100,000 McNeil Interests note and remand that portion of the cause to the trial court for further proceedings consistent with this opinion. We affirm the remainder of the judgment. Accordingly, the judgment of the trial court is affirmed, in part, and reversed and remanded, in part.

/s/        Sharon McCally
                 Justice

Panel consists of Justices Brown, Christopher, and McCally.

14